Floyd W. Bybee, #012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie A. Priser; | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Financial Recovery Services, Inc., d.b.a. in Arizona as Financial Recovery Services of Minnesota, Inc. (FN); | (Jury Trial Demanded) |
| Defendant. | |

## I. Preliminary Statement

1.  Plaintiff brings this action for damages based upon Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Plaintiff seeks recovery of statutory damages, actual damages, costs and attorney's fees.

## II. JURISDICTION

2.  Jurisdiction of this Court, over this action and the parties herein, arises

under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  Venue lies in the Tucson Division of the District of Arizona as Plaintiff's claims arose from acts of the Defendant perpetrated therein.

### III.  PARTIES

3.    Plaintiff resides in Pima County, Arizona.

4.    Plaintiff is a natural person allegedly obligated to pay a debt.

5.    Plaintiff is a "consumer" as that term is defined by FDCPA § 1692a(3).

6.    Defendant Financial Recovery Services, Inc. is a Minnesota corporation doing business in Arizona under the name of Financial Recovery Services of Minnesota, Inc. (FN), (hereinafter "FRS").

7.    FRS is licensed and bonded as a collection agency by the Arizona Department of Financial Affairs, license number 0903266.

8.    FRS collects or attempts to collect debts owed or asserted to be owed or due another.

9.    FRS is a "debt collector" as that term is defined by FDCPA § 1692a(6).

### IV.  Factual Allegations

10.   On or about November 5, 2012, FRS sent Plaintiff a collection letter attempting to collect on a debt allegedly owed to First Bankcard Center.

11.   If Plaintiff owed the alleged defaulted debt to First Bankcard Center, which she does not admit, the debt would have been incurred solely for family, personal or household purposes.

12.   According to FRS's letter, First Bankcard Center had assigned the alleged debt to FRS for collection purposes.

13.   On December 5, 2012, Plaintiff sent FRS a letter via Certified Mail disputing the First Bankcard Center debt and requested validation and the

- 2 -

1 name and address of the original creditor.

2 14. FRS received Plaintiff's dispute letter on December 10, 2002 at 8:48 a.m.

3 15. On that same day, December 10, 2012, FRS sent Plaintiff a second letter demanding payment without first providing verification of the debt as requested by Plaintiff.

6 16. Prior to sending the December 10, 2012 letter, FRS had not provided validation of the debt to Plaintiff.

8 17. Beginning in November 2012, FRS started a campaign of calling Plaintiff's work and leaving messages on her voice mail.

10 18. When a call is placed to Plaintiff's place of work, it is answered by an automated answering system which states "Thank you for calling Catalina Mortgage. If you know your party's extension you may enter it at any time," and also gives the caller various options to be directed to a particular department.

15 19. If someone dials Plaintiff's extension, they receive a message stating "This is Valerie Priser. I am either on the other line or away from my office . . . ."

18 20. On or about November 3, 2012, FRS called Plaintiff's place of work and entered Plaintiff's extension number leaving a message on the voice mail that the call was for Plaintiff, that it was from a debt collection company, and that it was an attempt to collect a debt.

22 21. At the time it made the call, FRS was aware that the call was to Plaintiff's work number, and that someone else may have access to and might listen to any voice message left on the system.

25 22. Shortly after leaving the message, Plaintiff received a call from her

- 3 -

1    employer notifying her that FRS had left the message and that he had

2    listened to it.

3    23.   Upon learning of the FRS message from her employer, Plaintiff was very

4          embarrassed and humiliated, and became very sick to her stomach, and

5          suffered from a migraine headache.

6    24.   On or about November 13, 2012, FRS again called Plaintiff's place of

7          work and entered Plaintiff's extension number leaving a message  on the

8          voice mail that the call was for Plaintiff, that it was from a debt collection

9          company, and that it was an attempt to collect a debt.

10   25.   At the time it made the call, FRS was aware that the call was to Plaintiff's

11         work number, and that someone else may have access to and might listen

12         to any voice message left on the system.

13   26.   Shortly after leaving the message, Plaintiff received a call from her

14         employer notifying her that FRS had left the message and that he had

15         listened to it.

16   27.   Upon learning of this second FRS message from her employer, Plaintiff

17         was again very embarrassed and humiliated, and became very emotionally

18         stressed over the invasion of her privacy. She also got a migraine

19         headache.

20   28.   On or about December 5, 2012, FRS called Plaintiff's place of work a

21         third time and entered Plaintiff's extension number leaving a message  on

22         the voice mail that the call was for Plaintiff, that it was from a debt

23         collection company, and that it was an attempt to collect a debt.

24   29.   At the time it made the call, FRS was aware that the call was to Plaintiff's

25         work number, and that someone else may have access to and might listen

to any voice message left on the system.

30. Shortly after leaving the message, Plaintiff received a call from her employer notifying her that FRS had left the message and that he had listened to it.

31. Upon learning of the third FRS message from her employer, Plaintiff was again very embarrassed, and became very anxious as the calls continued to be left at her work. Again, she got another migraine headache.

32. At the time these messages were left by FRS, Plaintiff was on family medical leave.

33. At the time these messages were left, Plaintiff was working remotely part-time out of the office.

34. As a result and proximate cause of Defendant's actions, Plaintiff has suffered actual damages, including, but not limited to, anxiety, embarrassment, humiliation, and other emotional distress, which caused her to become physically ill, and to suffer with extreme migraine headaches.

## V. Causes of Action

### a. Fair Debt Collection Practices Act

35. Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

36. Defendant's violations of the FDCPA include, but are not necessarily limited to, 15 U.S.C. §§ 1692c(b), and 1692g.

37. As a direct result and proximate cause of Defendant's actions in violation of the FDCPA, Plaintiff has suffered actual damages.

## VI. DEMAND FOR JURY TRIAL

1    Plaintiff hereby demands a jury trial on all issues so triable.

2                        **VII.  PRAYER FOR RELIEF**

3    WHEREFORE, Plaintiff requests that judgment be entered against

4    Defendant for:

5        a)    Actual damages under the FDCPA;

6        b)    Statutory damages under the FDCPA;

7        c)    Costs and reasonable attorney's fees pursuant to the FDCPA; and

8        d)    Such other relief as may be just and proper.

9    DATED  May 3, 2013  .

10

11                            s/ Floyd W. Bybee
                             Floyd W. Bybee, #012651
12                           **BYBEE LAW CENTER, PLC**
                             90 S. Kyrene Rd., Ste. 5
13                           Chandler, AZ 85226-4687
                             Office: (480) 756-8822
14                           Fax: (480) 302-4186
                             floyd@bybeelaw.com
15
                             Attorney for Plaintiff
16

17

18

19

20

21

22

23

24

25